SEYFARTH SHAW LLP
Joshua A. Rodine (SBN 237774)
jrodine@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:   (310) 201-5219

SEYFARTH SHAW LLP
Kara D. Keister (SBN 250260)
kkeister@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone:   (916) 448-0159
Facsimile:   (916) 558-4839

Attorneys for Defendants
ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC.
and ABBOTT LABORATORIES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY CASTILLO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ST. JUDE, MEDICAL CARDIOLOGY DIVISION, INC., a corporation; ABBOTT LABORATORIES, a corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>Complaint Filed:  December 1, 2021 |

To the United States District Court for the Northern District of California, and to Plaintiff and his attorneys of record:

Please take notice that Defendants St. Jude Medical, Cardiology Division, Inc. ("St. Jude") and Abbott Laboratories ("Abbott") ("collectively Defendants") hereby remove the above-captioned action from the Superior Court of the State of California for the County of Alameda, Case No. 21CV003397 to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1441 and 1446. This Notice is based upon original jurisdiction of the United States District Court over the

1

parties based upon complete diversity of citizenship, codified in relevant part at 28 U.S.C. § 1332. Removal is proper for the following reasons:

## I. PROCEDURAL BACKGROUND IN STATE COURT

1. This removal involves an employment action that was filed in the Superior Court of the State of California, County of Alameda, entitled, "*BRADLEY CASTILLO, Plaintiff, v. ST. JUDE, MEDICAL CARDIOLOGY DIVISION, INC., a corporation; ABBOTT LABORATORIES, a corporation; and DOES 1 through 20, inclusive Defendants*" ("Complaint") designated Alameda County Superior Court Case No. 21CV003397. In the Complaint, Plaintiff alleges claims for (1) Wrongful Termination; (2) Age Discrimination (Cal. Gov. Code § 12940 (A)); (3) Retaliation for Harassment and/or Discrimination Complaints (Cal. Gov. Code § 12940 (H)); (4) Failure To Prevent (Cal. Gov. Code § 12940(k)); Retaliation for Refusing and/or Complaining about Illegal Conduct (Cal. Lab. Code § 1102.5); and (6) Failure To Produce Personnel File (Cal. Lab. Code § 1198.5). A true and correct copy of the Summons and Complaint is attached hereto as Exhibit 1. (Keister Dec. ¶ 3.)

2. On December 8, 2021, Plaintiff served Abbott with the Summons and Complaint and other ancillary documents. A true and correct copy of the Service of Process Transmittal, Civil Case Cover Sheet, and Notice of Case Assignment served with the Complaint are attached hereto, collectively, as Exhibit 2. (Keister Dec. ¶ 3.)

3. On January 5, 2022, Defendants filed their Answer to the Complaint in the Superior Court of the State of California for the County of Alameda. A true and correct copy of Defendants' Answer is attached hereto as Exhibit 3.

4. Exhibits 1, 2, and 3 constitute all of the pleadings served on Defendants and/or filed by Defendants in the state court action prior to filing this Notice of Removal. There is currently a Case Management Conference set for March 23, 2022, before the Alameda County Superior Court. (Keister Dec. ¶ 4.)

## II. TIMELINESS OF REMOVAL

5. This notice of removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty days of service upon Defendants of the Complaint. 28 U.S.C. §

1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint). (Exhibit 2.)

**III. DIVERSITY JURISDICTION**

6. This Court has jurisdiction over this action because there is complete diversity of citizenship among the Parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. 28 U.S.C. § 1332(a).

7. The complete diversity requirement merely means that all plaintiffs must be of different citizenship than all defendants, and any instance of common citizenship "deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

8. A party's citizenship is determined at the time the lawsuit was filed. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

9. In the present case, the Parties had complete diversity of citizenship at the time the lawsuit was filed because Plaintiff's citizenship was, and is, diverse from all Defendants.

    **A.    <u>Plaintiff Is a Citizen of California</u>**

10. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state."). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000).

11. Here, Plaintiff Bradley Castillo ("Plaintiff") alleges that he is and was all times relevant to the Complaint a resident of the State of California. (Compl. ¶ 3.)

12. Additionally, Plaintiff worked for St. Jude within the State of California. (Declaration of Kimberly Braden ["Braden Dec."] ¶ 3). St. Jude requires employees to keep their contact information current while they are employed. (*Id.* at ¶ 4.) Plaintiff provided St. Jude with his home address during the course of his employment for purposes of his personnel file, payroll checks, and payroll and tax withholdings. (*Id.*) Plaintiff's residential address on file with St. Jude has always been located in San Ramon, California. (*Id.*) Thus, Plaintiff was at all times and still is, a citizen of the State of California.

### B.  Defendants Are Not California Citizens

13. Defendants are now, and were, at the time of the filing of this action, citizens of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).

14. Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection … [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

15. For purposes of diversity jurisdiction, a limited liability company ("LLC") is a citizen of every state of which its members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F. 3d 894, 899 (9th Cir. 2006) (holding that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens); *see also Doppes v. Cal. Scents, LLC*, 2018 WL 3583052, at *2 (C.D. Cal. July 25, 2018).

#### 1.  Abbott's Citizenship

16. Abbott Laboratories is incorporated in the State of Illinois with its principal place of business in Illinois (its corporate headquarters is located in Abbott Park, Illinois). (Paik Dec. ¶ 3.)

17. Abbott Laboratories is an independent, publicly-held company (NYSE: ABT) that has no parent corporation. No publicly-held company owns 10% or more of Abbott Laboratories' stock. (Paik Dec. ¶ 3.)

18. Therefore, upon review of the citizenship of Abbott, Abbott is not a citizen of the State of California, but rather a citizen of the State of Illinois.

**2. St. Jude's Citizenship**

19. On January 4, 2017, Abbott acquired St. Jude Medical, Inc., a Minnesota corporation, and its subsidiaries, including St. Jude Medical, Cardiology Division, Inc., a Delaware corporation, pursuant to the Agreement and Plan of Merger dated as of April 27, 2016. (Paik Dec. ¶ 4.)

20. On January 4, 2017, St. Jude Medical, Inc. merged with and into Vault Merger Sub, LLC, a Delaware limited liability company, which then changed its name to St. Jude Medical, LLC. (Paik Dec. ¶ 5.)

21. St. Jude Medical, Cardiology Division, Inc. is a wholly owned subsidiary of St. Jude Medical, LLC, which is a wholly-owned subsidiary of Abbott. (Paik Dec. ¶ 6.)

22. St. Jude Medical, LLC is a Delaware limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in St. Paul, Minnesota. The only owner/member of St. Jude Medical, LLC is Abbott Laboratories. (Paik Dec. ¶ 7.)

23. Therefore, upon review of the citizenship of St. Jude, St. Jude is not a citizen of California, but rather a citizen of the States of Delaware, Illinois and Minnesota.

**C. Doe Defendants' Citizenship**

24. The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."). Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of the naming of Doe defendants 1 through 20, inclusive, does not deprive this Court of jurisdiction.

25. Accordingly, pursuant to 28 U.S.C. section 1332(c), Plaintiff and all Defendants have diverse citizenship.

**IV.    AMOUNT IN CONTROVERSY**

25. While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.00. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 404 (9th Cir. 1996) (where a plaintiff's state court complaint does not specify a particular amount of damages, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds the requisite threshold).

26. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). Furthermore, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that a court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may set forth underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Id.*; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

27. As the Supreme Court has explained, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy"). Defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is "what is in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

28. In determining whether a complaint meets the $75,000 threshold under U.S.C. section 1332(a), the Court must consider a plaintiff's alleged aggregate damages, special damages, punitive damages, and attorney's fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorney's fees may be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account in determining amount in controversy where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorney's fees and punitive damages).

29. The calculations supporting the amount in controversy are based on Plaintiff's *potential* recovery pursuant to the claims alleged in the Complaint, assuming, without any admission, the truth of any of the allegations, and assuming liability (which is disputed) based on Plaintiff's theory of recovery.

### A. Plaintiff's Purported Compensatory Damages Exceed $75,000

30. In his Complaint, Plaintiff seeks to recover compensatory damages including lost wages and future lost wages, special damages, and punitive damages. (Compl. ¶¶ 44-46.) As noted above, in the Complaint, Plaintiff alleges claims for (1) Wrongful Termination; (2) Age Discrimination (Cal. Gov. Code § 12940 (A)); (3) Retaliation for Harassment and/or Discrimination Complaints (Cal. Gov. Code § 12940 (H)); (4) Failure To Prevent (Cal. Gov. Code § 12940(k)); Retaliation for Refusing and/or Complaining about Illegal Conduct (Cal. Lab. Code § 1102.5)); and (6) Failure To Produce Personnel File (Cal. Lab. Code § 1198.5).

31. While employed at St. Jude, Plaintiff alleges he earned an annual salary of $160,000, a 15% annual bonus, stock options, and annual salary increases of 2.5%-3.8%. (Compl. ¶ 19.) Plaintiff alleges he was terminated on or about August 12, 2021. (*Id.* at ¶ 35.) Conservatively estimating a December 2022 trial date (one year after the Complaint was filed), Plaintiff's lost wages alone will amount to approximately $213,333, i.e., sixteen months between his alleged termination and trial.[1]

32. In addition to back pay, a plaintiff who prevails on a claim for wrongful termination or discriminatory discharge of employment may be entitled to either reinstatement or an award of "front

---

[1] $160,000 ÷ 12 months x 16 months = $213,333.33.

7

1  pay" in lieu of reinstatement. *See*, *e.g.*, *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1346 (9th

2  Cir. 1997) (stating that a court has discretion to award front pay in lieu of reinstatement); *James v.*

3  *Childtime Childcare, Inc.*, No. Civ. S-06-2676 DFL DAD, 2007 WL 1589543, at *2, n.1 (E.D. Cal. June

4  1, 2007) (while courts evaluate the amount in controversy at the time of removal, future lost wages are

5  properly considered in that calculation); *see also Crum v. Circus Circuit Enters.*, 231 F.3d 1129, 1131

6  (9th Cir. 2000) (future damages are properly considered in determining amount in controversy).

7      33. An award of three years' front pay would entitle Plaintiff to more than $480,000 in

8  additional recovery. *See Traxler v. Multnomah County*, 569 F.3d 1007, 1015 (9th Cir. 2010) (upholding

9  district court's decision to award nearly four years' front pay in a wrongful termination suit); *see also*

10 *Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, *4 (N.D. Cal. 2008) (finding

11 three years of front pay "appropriate" in a discrimination suit); *Ackerman v. Western Elec. Co., Inc.*, 643

12 F. Supp. 836, 856 (N.D. Cal. 1986) (same). Thus, Plaintiff's allegations of lost wages alone exceed

13 $770,000.

14     **B.     Emotional Distress Damages**

15     34. In addition to compensatory damages, Plaintiff claims damages for "mental and physical

16 distress." (Compl.¶ 45.) In *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 WL

17 590261, *4 (E.D. Cal. 2017), the Eastern District of California made clear that "[i]n determining the

18 amount in controversy, a court may assess likely emotional distress damages by reference to damages

19 awards in similar discrimination cases." Applying that rule, the *Thompson* court found the defendant met

20 its burden of showing that damages awards for emotional distress in analogous cases are often

21 substantial, where the defendant pointed to a jury award of $122,000 in emotional distress damages to an

22 employee who sued for pregnancy discrimination and wrongful termination. *Id.*

23     35. In fact, such damages may exceed $122,000. A review of jury verdicts in California

24 demonstrates as much. *See*, *e.g.*, *Silverman v. Stuart F. Cooper Inc.*, No. BC467464, 2013 WL 5820140

25 (Los Angeles Sup. Ct.) (jury awarded $157,001 for emotional distress damages in discrimination case);

26 *Aboulafia v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and suffering

27 award of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action);

28 *Ward v. Cadbury Schweppes Bottling Grp.*, 09CV03279(DMG), 2011 WL 7447633 (C.D. Cal) (jury

award $5,600,000 in non-economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in an discrimination action); *Orue v. Sears, Roebuck & Co.*, 2007 WL 2456108 (L.A. County Superior Ct. 2007) (award of $173,056.00 to employee who brought action based on disability and age discrimination against employer who wrongfully terminated his employment); *Leimandt v. Mega RV Corp.*, No. 30-2010-00388086, 2011 WL 2912831 (Orange County Sup. Ct.) (jury awarded $385,000 in pain and suffering to employee in a discrimination case). These awards demonstrate that, for diversity purposes, the value of Plaintiff's alleged emotional distress damages exceeds the $75,000 amount in controversy requirement.

### C. Attorney's Fees

36. Plaintiff also claims that he is entitled to statutory attorney's fees. (Compl. ¶¶ 54, 63, 71, 82, 88.) Attorney's fees are properly considered in calculating the amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Galt*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). Under California Government Code section 12965(b), the court in its discretion may award fees and costs to the "prevailing party" in FEHA actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent circumstances that would render the award unjust." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005). Here, Plaintiff asserts three FEHA claims against Defendants in the Complaint. (Compl. Second through Fourth Causes of Action.) Requests for attorney's fees must be considered in ascertaining the amount in controversy. *See Galt, supra*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether award is discretionary or mandatory).

37. Defendants anticipate that the Parties will propound written discovery, that depositions will be taken in this case, and that Defendants will file a Motion for Summary Judgment. (Keister Dec. ¶ 5.) If Plaintiff prevails, he could be entitled to an award of attorney's fees that alone are "more likely than not" to exceed $75,000, as is typical in employment discrimination cases. Indeed, Courts have awarded attorney's fees in excess of $75,000 in cases involving discrimination. *See*, *e.g.*, *Crawford v. DIRECTV, Inc.*, No. BC417507, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving

attorney's fee award of $159,762.50 in alleged discrimination action); *Davis v. Robert Bosch Tool Corp.*, No. B185408, 2007 WL 2014301, *9 (Cal. Ct. App. 2d Dist. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v. Cal. Dep't of Transp.*, No. GIC836582, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorney's fees award of $490,000 for claims including discrimination case).

### D. Punitive Damages

38. Plaintiff also seeks punitive damages in the Complaint. (Compl. ¶¶ 46, 53, 62, 70, 83.) The Court must also consider Plaintiff's request for punitive damages in determining the amount in controversy. *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law). "Because plaintiff brings a claim under FEHA, and '[p]unitive damages are recoverable for FEHA violations,' punitive damages may be included in the amount in controversy here." *Thompson*, 2017 WL 590261 at *4.

39. Verdicts in similar cases show that, when awarded, punitive damages in discrimination and wrongfully termination cases often exceed $75,000. *See*, *e.g.*, *Aguilar v. LA Metro BP Holding Co., LLC, et al.*, No. BC651278, 2018 WL 7286562 (Los Angeles Sup. Ct., Nov. 20, 2018) (jury awarded $145,000 in punitive damages for claims of discrimination, harassment, retaliation, failure to prevent harassment and discrimination, and wrongful termination); *Meadowcroft, et al. v. Silverton Partners, Inc., et al.*, No. BC633239, 2018 WL 7635472 (Los Angeles Sup. Ct., Sep. 11, 2018) (jury awarded plaintiffs $3 million each in punitive damages for claims of harassment, retaliation, wrongful termination and failure to prevent harassment); *Olivas-Dean v. American Meizhou Dongpo Group, Inc., et al.*, No BC581538, 2017 WL 3531353 (Los Angeles Sup. Ct., April 24, 2017) ($250,000 awarded in punitive damages for harassment, discrimination, retaliation, wrongful termination). *Aboulida v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct., Dec. 17, 2013) (award of $1,000,000 in punitive damages in discrimination case).

40. In sum, Plaintiff's aggregated recovery on his claims, including compensatory damages such as lost wages and emotional distress damages, attorneys' fees, and punitive damages, satisfies the $75,000 jurisdictional threshold. While Defendants deny any liability as to Plaintiff's claims, it is "more

likely than not" that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a)

41. Since diversity of citizenship exists between Plaintiff and Defendants, and the matter in controversy between the Parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1) and removal is proper.

**V.   VENUE**

42. Venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. sections 84(c)(2), 1441, and 1446(a) because Plaintiff filed this action in the Superior Court of California, County of Alameda. The County of Alameda lies within the jurisdiction of the United States District Court, Northern District of California. In addition, the action arose in the County of Alameda because the facility where Plaintiff worked is in Alameda County, California. Therefore, venue is proper it is in the "district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

**VI.   NOTICE OF REMOVAL ON STATE COURT**

43. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Alameda.

Wherefore, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

DATED: January 7, 2022

SEYFARTH SHAW LLP

By: */s/ Kara D. Keister*
     Kara D. Keister

Attorneys for Defendants
ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC. AND ABBOTT LABORATORIES