AARON COLBY (SBN 247339)
    aaron@colbylegal.com
ZOE YUZNA (SBN 268496)
    zoe@colbylegal.com
**COLBY LAW FIRM, PC**
13263 Ventura Boulevard, Suite 203
Studio City, CA 91604
Telephone: (818) 253-1599
Fax: (818) 474-1981

Attorney for PLAINTIFF
BRADLEY CASTILLO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRADLEY CASTILLO, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., a corporation; ABBOTT LABORATORIES, a corporation; and DOES 1 through 20 inclusive,<br><br>                Defendant. | **Case No. 3:22-CV-00107-SI**<br><br>Assigned to Hon. Susan Illston<br><br>**PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: February 17, 2023<br>Time: 10 a.m.<br>Dept.: 1, 17th Floor<br><br>Complaint Filed:    December 1, 2021<br>FSC Date:           May 10, 2023<br>Trial Date:         May 23, 2023 |

1

## TABLE OF CONTENTS

2

I.    INTRODUCTION ....................................................................................................4

II.   FACTS AND EVIDENCE ......................................................................................5

III.  LEGAL STANDARD ...........................................................................................13

IV.  ARGUMENT ........................................................................................................14

    A.   AGE DISCRIMINATION AND FAILURE TO PREVENT DISCRIMINATION...................................14
    B.   DISABILITY DISCRIMINATION AND FAILURE TO PREVENT DISCRIMINATION ..................................16
    C.   HARASSMENT ................................................................................................18
    D.   FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS ...................................19
    E.   FAILURE TO PROVIDE REASONABLE ACCOMMODATION............................20
    F.   RETALIATION – FEHA AND LABOR CODE SECTION 1102.5.......................21
    G.   WRONGFUL TERMINATION ...........................................................................22
    H.   PERSONNEL RECORDS ...................................................................................23
    I.   PUNITIVE DAMAGES .....................................................................................24

V.   CONCLUSION ....................................................................................................26

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alejandro v. ST Micro Electronics, Inc.*, 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015)..........................17
*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).........................13
*Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005)......................14, 15
*Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)....................................................................21
*Manatt v. Bank of America,* 339 F.3d 792, 800 (9th Cir. 2003.)......................................................21
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)................................................................................................................................................13
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).........................................14, 17, 22
*McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004).......................................14
*Rangel v. American Medical Response West*, 2013 WL 1785907 at *34-35 (E.D. Cal. 2013)...............25
*Roebuck v. Drexel University*, 852 F.2d 715, 727 (3d Cir. 1988)....................................................21
*Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956, 962 (N.D. Cal. 1994)........................................20
*T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ...............13
*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981) ........................................14
*Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)....................................13
*Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).............................................................13
*Veloz v. Sears, Roebuck* and Co., 2017 WL 5151313 at *14 (C.D. Cal. 2017)...................................25

**CALIFORNIA CASES**

*A.M. v. Albertsons, LLC*, 178 Cal.App.4th 455, 463-464 (2009).......................................................20
*Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.*, 122 Cal.App.4th 1004, 1015 (2004)..17
*Claudio v. Regents of the Univ. of Cal.*, 134 Cal.App.4th 224, 245 (2005)........................................20
*Cloud v. Casey*, 76 Cal.App.4th 895, 911–912 (1999)....................................................................25
*Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989)........................................18
*Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th 34, 62, fn.22 (2006) ..........................................19
*Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 (Cal. 2000)............................................................14
*Jensen v. Wells Fargo,* 85 Cal.App.4th 245-254 (2000)..........................................................17, 20
*Lawson v. PPG Architectural Finishes, Inc.* 12 Cal.5th 703 (2022)....................................................22
*Moore v. Regents of Univ. of Cal.*, 248 Cal.App.4th 216, 239 (2016) ...............................................16
*Morgan v. Regents of the Univ. of California*, 88 Cal.App.4th 52, 69 (2000)....................................21
*Nadaf-Rahrov v. The Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 984-985 (2008)...................19
*Prilliman v. United Air Lines, Inc.*, 53 Cal.App.4th 935, 949-950 (1997)........................................21
*Reeves v. Safeway Stores, Inc.,* 121 Cal.App.4th 95, 147 (2004)........................................14, 21, 22
*Scotch v. Art Institute of California*, 173 Cal.App.4th 986, 1013 (2009)............................................19
*Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413, 424 (2007)......19, 20, 24, 25

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) .....................................................................................................................13
Cal. Code Regs., tit. 2, § 11069(b) ...............................................................................................19
Cal. Code Regs., tit. 2, § 11069(c)(4)...........................................................................................20
Cal. Civ. Code § 3294(b)...............................................................................................................24
Cal. Labor Code § 1102.5...............................................................................................................22
Cal. Labor Code § 1102.6...............................................................................................................22
Gov. Code § 12940(m)...................................................................................................................20
Gov. Code § 12940(n)....................................................................................................................19
Gov. Code §§ 12940(a)(1), (a)(2), & (m).......................................................................................20

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **INTRODUCTION**

This case arises out of the termination of Plaintiff Bradley Castillo ("Castillo") from his job as a Packaging Manager for Defendants Abbott Laboratories ("Abbott") and St. Jude Medical, Cardiology Division, Inc. ("St. Jude") (collectively, "Defendants").  Castillo is a 67-year-old man who suffers from dyslexia.  During Castillo's first 5 years as a Packaging Manager for Defendants, Castillo received accommodation for his dyslexia and good performance reviews.  Then, Castillo's supervisor changed. From the start, Castillo's new supervisor Noushin Isadvastar ("Isadvastar") unfairly scrutinized Castillo and his team.  Isadvastar asked Castillo how long he planned to work for Defendants (code for *when would Castillo retire*), and repeatedly criticized Castillo for his email style and punctuation even though Isadvastar later admitted Castillo's email style and punctuation were not important parts of his job. (Castillo's prior supervisor David Villarreal had cut Castillo slack on his written communications as an accommodation for Castillo's dyslexia and, in doing so, gave Castillo good reviews and valued Castillo's expertise and contributions.)

Castillo was shellshocked and humiliated by Isadvastar's criticism of him and his team. Isadvastar was cold-calling staff members to gather negative feedback on Castillo – but notably did not reach out to Castillo's prior supervisor David Villarreal who had overseen Castillo and the Packaging Team for the past 5 years.  Isadvastar recognizes that Castillo's performance did not change when she became his supervisor and he was still highly regarded by his direct reports – but she wanted him out anyway.  A few months into supervising Castillo, Isadvastar enlisted Employee Relations Manager Deborah Boskovic ("Boskovic") to help her in her efforts to get rid of Castillo.  In a May 3, 2021 email, Isadvastar told Boskovic she decided to put Castillo on a performance improvement plan or "***any simple way of letting him go***."  (A couple months later, they found a way.)

Castillo complained to Human Resources about the discrimination and harassment he was experiencing from Isadvastar, but Human Resources dismissed Castillo's complaints without investigation, simply "letting him talk" and telling him to work it out directly with Isadvastar – the person he was complaining about, as though it was a run of the mill work dispute rather than a complaint implicating an employee's civil rights, which Defendants purport to take seriously.

In August 2021, two months after Isadvastar's "any simple way of letting him go" email, one of Castillo's team members Wil Caday ("Caday") got another job, largely because of the way Isadvastar mistreated the Packaging Team.  Caday did not want Isadvastar to join his going away lunch, so Castillo organized the lunch without Isadvastar and then, on his expense report, referred to the lunch as a birthday lunch – to avoid hurting Isadvastar's feelings for not being included.  Isadvastar was suspicious of the expense report entry and promptly investigated it.  She concluded Castillo had miscoded the lunch and returned to Boskovic to report her findings.  Then, Boskovic conducted another investigation of the expense report.  Castillo admitted to Boskovic that he miscoded the going away lunch as a birthday lunch to avoid hurting Isadvastar's feelings.

When the lunch was recoded, Defendants approved the expense.  The fact that Defendants approved the expense shows the miscoding was of no business consequence and did not warrant termination.

Defendants trump-up the misrepresentation aspect of the miscoding as some huge red flag about Castillo's character but Castillo's reason for the trivial discrepancy (miscoding a going away lunch birthday lunch) was driven by Castillo's desire to protect his boss' feelings.  Defendants' own progressive discipline policy dictates that, if Castillo's white lie to protect his boss was in fact somehow actionable, he should have received a warning – not termination.

The odd circumstances of Castillo's termination give rise to discriminatory and retaliatory animus, particularly given the events in the preceding months – and the evidence tracks.  This case is permeated by disputed issues of material fact.  Accordingly, summary judgment is improper and Defendants' motion should be denied.

## II.    FACTS AND EVIDENCE

Plaintiff Bradley Castillo is a 67-year-old man.[1]  Castillo has suffered from dyslexia his whole life, but was able to have a successful career in engineering when he received accommodation for his dyslexia.[2]  When Castillo stopped receiving accommodation, Defendants went after Castillo with

---

[1] Deposition of Bradley Castillo ("Castillo Depo") 22:6-20, 77:15-17, Ex. 6-8. All relevant pages of the Castillo Depo cited herein are excerpted and highlighted as Exhibit 6 to the Declaration of Zoe Yuzna filed concurrently herewith ("Yuzna Decl.").

[2] Castillo Depo 62:22-65:17, 68:5-9, Ex. 6-8.

repeated criticism of him and his whole team and then fired him when he complained.[3]

Abbott Laboratories is a multinational medical devices and health care company, with 113,000 employees.[4]  St. Jude Medical is a wholly owned subsidiary of Abbott.[5][6]

Castillo worked for Defendants as a Packaging Manager for 6 years from October 2015 to August 2021.[7]  Castillo's primary duties included overseeing the production line and packaging team to ensure packaging components came out positively, and to address and correct any arising issues on the line to guarantee the production ran seamlessly.[8]  The quality of Castillo's internal emails were not essential functions of Castillo's job.[9]

For Castillo's first five (5) years of employment with Defendants, Castillo reported to Director of Operational Excellence & Operations System David Villarreal ("Villarreal").[10]  Under Villarreal, Castillo received good performance reviews.[11]  Villarreal was aware of Castillo's dyslexia and accommodated Castillo by cutting him slack on errors in his written communications.[12]  (Castillo's emails were all internal, so typos and style issues were not of particular importance for Castillo's effectiveness in his job.[13])  Villarreal appreciated Castillo's expertise and contributions and had no plans to discipline or terminate Castillo.[14]  With Villarreal's accommodation of Castillo's dyslexia, Castillo received scores of 96%, 90%, and 96% on his performance evaluations in 2017, 2018, and 2019, respectively.[15]

Then, in December 2020, Villarreal transferred to another position and Noushin Isadvastar

---

[3] Castillo Depo 169:23-171:7.
[4] RJN Ex. 1.
[5] RJN Ex. 2.
[6] Defendants contend Abbott was not Castillo's employer but their own evidence relies on and references Abbott repeatedly and Isadvastar verified discovery responses on behalf of Abbott. (Yuzna Decl., Ex. 5.)  Plaintiff understands this issue is not being decided on this motion and requests the opportunity to brief the issue more fully if the Court will be considering the issue at this time.
[7] Castillo Depo 22:6-20, 77:15-17..
[8] Castillo Depo 33:11-35:23, Ex. 5.
[9] Deposition Of Noushin Isadvastar ("Isadvastar Depo") 129:24-131:9. All pages of the Isadvastar Depo cited herein are excerpted and highlighted as Exhibit 5 to the Yuzna Decl. filed concurrently herewith.
[10] Castillo Depo 22:6-9, 48:21-23.
[11] Castillo Depo Ex. 6-8.
[12] Declaration of Bradley Castillo ("Castillo Decl.") ¶ 2.
[13] Isadvastar Depo 124:17:125:8, 129:24-131:9.
[14] Castillo Decl. ¶ 2.
[15] Castillo Depo Ex. 6-8.

became Castillo's supervisor.[16]  From the start, Isadvastar was critical of Castillo and his team – before she even settled into the roll and before she had an opportunity to observe Castillo and his team and their work for any meaningful period of time.[17]  Instead of pausing for an observation period, Isadvastar immediately criticized Castillo for anything and everything, including his email style and punctuation.[18]

Castillo always understood his email style and punctuation were not essential functions of his job, so he believed he did not need accommodation to perform his job and believed Isadvastar was simply harassing him on the basis of his disability (which was known to Defendants via David Villarreal who successfully accommodated Castillo by cutting him slack in that area, and thereby enabled Castillo to succeed in the core functions of his job).[19]

In an early January 2021 meeting, Isadvastar asked Castillo how long he planned to work for Abbott to which he replied, "a long time."[20]  Castillo observed that Isadvastar did not like his response and appeared to insinuate that Castillo should retire.[21]  For Castillo, it all started making sense why Isadvastar was coming after him so aggressively – he understood she thought he was too old for the job and wanted him out.[22]

Several months later, on Thursday, April 29, 2021, Isadvastar spoke with Employee Relations Manager Deborah Boskovic in Human Resources about Castillo.[23]  Isadvastar received guidance from Boskovic about documenting conversations with employees (apparently in connection with Castillo).[24]  Then, two business days later, on Monday, May 3, 2021, Isadvastar documented her concerns about Castillo's emails to him: "Please try your best to improve your written communication with better

[16] Castillo Depo 48:21-23; Isadvastar Depo 56:6-57:2.
[17] Isadvastar Depo 66:9-24, 104:19-105:13.
[18] In her deposition in this litigation, Isadvastar recognized that Castillo's email punctuation and style were not essential functions of Castillo's job.  (Isadvastar Depo 129:24-131:9.).  However, the documents from the relevant time period show Isadvastar repeatedly criticized Castillo about his email punctuation and style.  (Id., Ex. 32.)  Isadvastar even complained to Human Resources about Castillo's emails, but then at deposition, she denied caring about such matters all together and recognized Castillo's email style and punctuation were not essential functions of Castillo's job.  (Id.)  A reasonable juror could infer Isadvastar's contradictions on this issue raise questions of pretext as to Defendants' reason for terminating Castillo.
[19] Castillo Depo 65:24-67:2.
[20] Castillo Depo 73:23-74:1, 74:10-21.
[21] Castillo Depo 74:22-75:3.
[22] Castillo Depo 75:1-11.
[23] Isadvastar Depo 108:3-109:10.
[24] Isadvastar Depo Ex. 28.

punctuation, separating sentences with comma and period, and spaces."[25]

That same day, May 3, 2021, Isadvastar emailed Boskovic, saying she had decided to put Castillo on a Performance Improvement Plan ("PIP") "*or any simple way of letting him go*."[26]  Just two business days after her first reach-out to Human Resources about Castillo (and the same day she counseled Castillo about his email style and typos), Isadvastar documented her generalized desire to fire Castillo before she had any specific basis.[27]

On May 5, 2021 – two days after telling Boskovic she decided to put Castillo on a PIP "or any simple way of letting him go" – Isadvastar created a Record of Discussion ("ROD") about her alleged meetings with Castillo over the prior five (5) months.[28]  Isadvastar put together the ROD after the fact – not in real time as Castillo's policies and practices mandated.[29]

The ROD shows Isadvastar was reaching out to employees to gather negative feedback against Castillo, which she confirmed in her deposition.[30]  Isadvastar's witch-hunt of Castillo was humiliating for Castillo.[31]  Co-workers observed Isadvastar's disdain for Castillo and made comments to him like, "What's she going to do to you next?"[32]  Castillo's team felt targeted and started looking for other jobs. Indeed, today, not a single Packaging Team member is still employed by Defendants – they all left.[33] Isadvastar reduced her weekly meetings with Castillo from one-hour to 30 minutes, but she did not reduce her meetings with her other direct reports.[34]  Then, Isadvastar had Castillo's reports start reporting to Staff Packaging Engineer Kokwai Lai (one of Castillo's reports who was in his mid-40's and who was identified in Defendants' records as Castillo's successor).[35]

---

[25] Isadvastar Depo Ex. 32.
[26] Isadvastar Depo Ex. 29.
[27] A juror could reasonably infer that "any simple way of letting him go" evidences Isadvastar's desire to find a reason to terminate Castillo and to enlist Boskovic's assistance in finding a reason to terminate Castillo (two months before they came up with a reason to terminate Castillo).  At her deposition, Isadvastar was coy and shifty in her testimony about what she meant by the phrase, saying "No, I mean letting him go to that pathway. I mean, taking that – that pathway, whatever that is similar pathway," [sic] but a juror could (and likely would) reasonably infer that "any simple way of letting him go" meant *any simple way to fire Castillo.  See* Isadvastar Depo 121:3-17.
[28] Isadvastar Depo Ex. 32.
[29] Isadvastar Depo 133:5-9 and Ex. 28.
[30] Isadvastar Depo 136:4-24.
[31] Castillo Decl. ¶ 3.
[32] Castillo Depo 100:19-101:5.
[33] Castillo Decl. ¶ 3; Isadvastar Depo 61:8-9, 62:12-13, 20-21.
[34] Castillo Depo 110:10-111:15.
[35] Castillo Depo 109:11-20; Isadvastar Depo Ex. 41 ("Lai, Brad's successor").

On May 7, 2021, Isadvastar finally met with Castillo to discuss her alleged concerns about his performance.[36] Isadvastar again criticized Castillo's "communication skills."[37]  Castillo explained to Isadvastar that his dyslexia created challenges for him in his written communications and explained how Villarreal had previously accommodated him.[38]  Isadvastar promptly notified Boskovic of Castillo's dyslexia comments and Boskovic provided Isadvastar guidance on Defendants' obligations to engage in an interactive process to attempt to accommodate Castillo.[39]

Isadvastar met with Castillo on May 11, 2021 and claims she engaged in an interactive process with Castillo at the meeting but Castillo's recollection of the meeting is different: *"I don't believe [the May 11, 2021 meeting] was for my issues with my dyslexia. It was just my overall situation."*[40] Isadvastar's documentation of the meeting also appears to be different because, when Isadvastar emailed Boskovic about the meeting later that day, in the subject line of the email, Isadvastar referred to the May 11, 2021 alleged interactive process meeting as "***Brad's Coaching Session – 5/11/21***."[41]  Also important to note, the "Accommodation" part of Isadvastar's record from the meeting is left blank and instead, Isadvastar documented that "[she] repeated her expectations . . ."  The alleged interactive process record shows Isadvastar further criticized Castillo in the meeting but does contain any evidence of Isadvastar engaging in an interactive process.[42]

Two days later, on May 13, 2021, Boskovic assisted Isadvastar in preparing a coaching memo for Castillo.[43]  Isadvastar delivered the memo to Castillo on May 17, 2021.[44]  Castillo was concerned the memo was a PIP but Isadvastar assured him it was not.[45]  Castillo was also concerned that the coaching was vague without clear objectives and timelines, and added additional assignments to Castillo's already full plate (while other managers were not given additional assignments).[46]  Most of all, Castillo was concerned that his suspicions were confirmed – Isadvastar wanted him off her team because of his age

---

[36] Isadvastar Depo 123:4-124:16.
[37] Isadvastar Depo Ex. 32.
[38] Castillo Depo 65:1-66:23.
[39] Isadvastar Depo 122:4-25, Ex. 30.
[40] Isadvastar Depo, Ex. 27; Castillo Depo 67:5-9.
[41] Yuzna Decl. Ex. 2.
[42] Isadvastar Depo Ex. 27.
[43] Isadvastar Depo Ex. 33.
[44] Castillo Depo 70:9-15, 20-24.
[45] Isadvastar Depo 138:13-139:13, Ex. 34.
[46] *Id.*

and her negative perceptions of him based on his written communications, which resulted from his dyslexia.

Castillo promptly brought his concerns to Lidwine Sadki ("Sadki"), a Senior Manager in Human Resources, the same day.[47]  He emailed Sadki asking to discuss a number of things, including "my age."[48]  In response, Sadki did not open-up an investigation.[49]  Instead, she (1) told Castillo to contact Human Resources to get a complaint ticket (which confused Castillo because Sadki *was* Human Resources);[50] and (2) emailed Boskovic, telling her, "My plan was to meet with him, let him talk it out, and advise him exactly what you said below 'contact ER and circle back with Noushin if you need clarifications.'"[51]  Defendants' HR team acted outside Defendants' protocols, which required HR to investigate Castillo's complaints.[52]  Indeed, Sadki – with Boskovic's direction – ignored Castillo's complaint about Isadvastar and "my age" and only addressed a practical question Castillo asked about a survey Isadvastar had directed him to create.

When Castillo received no response to his May 17, 2021 complaint to Sadki (which had been relayed to Boskovic), Castillo complained again to Human Resources on June 4, 2021.[53]  This time, Employee Relations Manager, Nitorshi Wilson ("Wilson") handled the complaint and created a ticket for complaint in-line with Defendants' protocols.[54]  The report for the complaint shows Wilson informed Isadvastar of the complaint but provides no detail on how the complaint was investigated, when it was investigated, and when the investigation was completed. Indeed, most dates on the form fall after Castillo's termination. The form leaves hanging many questions about Defendants' handling of Castillo's second complaint and the circumstances surrounding Defendants' alleged finding that the complaint was unsubstantiated.[55]

---

[47] Castillo Depo 72:4-73:1, 114:20-115:6, 173:22-174:2; Yuzna Decl. Ex. 3.
[48] Castillo Depo Ex. 11.
[49] Castillo Depo 105:2-14.
[50] Yuzna Decl. Ex. 3.
[51] *Id.*
[52] ECF 30-1, page 117.
[53] Castillo Depo 76:10-77:5, 173:22-174:2, Ex. 11.
[54] Isadvastar Depo Ex. 26.
[55] *Id.*

After Isadvastar delivered the coaching memo to Castillo on May 17, 2021, Boskovic emailed Isadvastar, advising her that she would be closing the case.[56] Boskovic expressed an interest in continuing to work as a team with Isadvastar: "With that said, should you need ER assistance in the future, I would be very happy to work with you again. You would just need to call the HR Service Center to open a new case. Then you could forward me the case number and I can ask for it to be assigned to me."[57] Ostensibly, Defendants' practice for randomly assigning HR cases is designed to avoid subjective handling of employee relations matters. Boskovic's email expressing an interest in continuing to work as a team with Isadvastar raises questions about Boskovic's objectivity in handling employment matters with Isadvastar, particularly with respect to Castillo.

In July 2021, one of Castillo's team members Wil Caday ("Caday") left his job with Defendants for a new opportunity.[58]  Caday told Castillo he was leaving Abbott because of Isadvastar's harsh management of the Packaging Team and made clear he did not want Isadvastar at his going away lunch.[59]  Castillo accommodated Caday's wishes by not inviting Isadvastar to the lunch.[60]  He had concerns about hurting Isadvastar's feelings but knew his team did not want her there.[61]

When Castillo filled-out his expense report for the lunch, he coded it as a team birthday lunch because that might avoid hurting Isadvastar's feelings, while keeping the expense in the same category for staff recognition and morale boosting.[62]  Castillo selected names from a drop-down menu and made a few mistakes in the drop down selections.

Castillo submitted the expense report on July 22, 2021.[63]  Isadvastar immediately scrutinized the report and launched an all-out investigation into whether the lunch was in fact to celebrate a birthday.[64]  Isadvastar conducted her own interviews and also made a formal report to Human Resources – to Deborah Boskovic (unsurprisingly, given their history of collaboration with respect to Castillo).[65]

---

[56] Yuzna Decl. Ex. 4.
[57] *Id.*
[58] Castillo Depo 78:22-25.
[59] Castillo Decl. ¶¶ 4-5.
[60] *Id.*
[61] *Id.*
[62] Isadvastar Depo Ex. 44.
[63] Castillo Depo 80:21-23.
[64] Isadvastar Depo 143:19-147:2.
[65] Isadvastar Depo 147:3-148:23.

Isadvastar interviewed Castillo about the report on July 27, 2021 and gave him a verbal counseling.[66] Then, Boskovic interviewed Castillo about the report on August 3, 2021.[67]  She told Castillo there were three possible disciplinary actions for the miscoding on the report:  either (1) Castillo would be permitted to simply send the report back for correction (no harm, no foul); (2) a letter would be added to Castillo's personnel file; or (3) Castillo would be terminated.[68]  Boskovic told Castillo the three options would be given to Isadvastar for her to decide.[69]  Then, shortly thereafter, Boskovic recommended termination that very same day.[70]

On August 11, 2021, Nitorshi Wilson called Castillo and told him that HR had completed the investigation into Castillo's complaint of harassment and discrimination by Noushin Isadvastar.[71] Wilson told Castillo the investigation found no evidence of harassment or discrimination and, therefore, the investigation and ticket were closed. [72]  Of course, Castillo disagreed with the finding.[73]

The next day, August 12, 2021, Isadvastar terminated Castillo.[74]  Isadvastar told Castillo he was fired for "improprieties on the expense report."  The termination record cites violations of Abbott's Honesty, Fairness and Integrity policy and a bookkeeping policy as the bases.[75]  Notably, that policy is nothing more than a general, vague adage about telling the truth and booking – not an actual policy about what conduct is covered and what consequences will flow from violation.  *See* Section IV.A *infra.*

---

[66] Isadvastar Depo Ex. 34.
[67] Declaration of Deborah Boskovic, Ex A.
[68]  Castillo Decl. ¶ 6.
[69] *Id.*; *see also* Isadvastar Depo 148:24-149:7 (Castillo asked Boskovic if he could make corrections to the expense report and resubmit, which Boskovic permitted and ultimately Defendants approved the expense).
[70] Defendants attempt to distance Isadvastar from the termination decision, but in their initial disclosures in the litigation, Defendants identify just one person as the termination decisionmaker: Isadvastar.  (*See* Yuzna Decl., Ex. 1.)  Defendants now elect to pin the decision to Boskovic and try to distance her from having any knowledge of Castillo's disability and complaints (and thus distance the termination decision from discriminatory and retaliatory animus), but the documents and circumstances are clear – Boskovic was working with Isadvastar the whole time.  Boskovic knew about Castillo's dyslexia and his complaint to Sadki and knew or should have known about everything in between.  It is either implausible or inexcusable that Boskovic, as an Employee Relations Manager, would not be familiar with all aspects of Castillo's personnel file with respect to protected categories and protected action prior to making a recommendation for termination – particularly when Boskovic had been involved in Castillo's personnel matters for months.
[71] Castillo Depo 116:23-118:4.
[72] Isadvastar Depo Ex. 26.
[73] *Id;* Castillo Depo 116:23-118:4.
[74] Castillo Depo 88:4-11.
[75] Isadvastar Depo Ex. 44.

Defendants replaced Castillo with his younger subordinate Kokwai Lai.[76]   (At deposition, Isadvastar denied replacing Castillo but her email from the termination date states that Lai replaced him, and it was Castillo's understanding as well that he was replaced by Lai who is in his mid-to-late 40's.[77])

On September 16, 2021, through counsel, Castillo requested his personnel records from Defendants.[78]  General Counsel for Defendants received the request the same day and sent a notice of representation letter to Castillo's counsel on September 21, 2021, but did not produce the records prior to Castillo's filing of his complaint in Superior Court on December 1, 2021.[79]  Defendants claim Abbot requested an authorization to release records from Castillo, but Castillo's attorneys never received such a request.[80]

## III.   LEGAL STANDARD

To win summary judgment, a movant must demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[If] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  At the summary judgment stage, courts do not make credibility determinations or weigh conflicting evidence, and must draw all inferences in the light most favorable to the non-moving party (Castillo).  *T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e). Conclusory, speculative testimony is insufficient to win summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

---

[76] Isadvastar Depo Ex. 41 ("Lai, Brad's successor").
[77] Isadvastar Depo. 84:1-8, 163:1-13, Ex. 41; Castillo Decl. ¶ 8.
[78] Declaration of Aaron Colby ("Colby Decl.")  ¶ 2, Ex. 1.
[79] Colby Decl.  ¶¶ 3-7, Ex. 2, 3.
[80] Colby Decl. ¶¶ 5-7.

IV.    **ARGUMENT**

    A.    **Age Discrimination and Failure to Prevent Discrimination**

        Summary judgment is inappropriate because Castillo has made a *prima facie* claim for age discrimination under the FEHA by demonstrating (1) he is age 40 or older, (2) he was performing his job adequately, (3) he suffered an adverse employment action, and (4) he was replaced by a younger worker or terminated under other circumstances supporting the inference of an improper, discriminatory motive. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 (Cal. 2000).  Defendants must proffer a legitimate, nondiscriminatory reason for Castillo's termination.  Defendants fail to do so; however, even if they were able to proffer some legitimate business reason, Castillo has raised a triable issue of fact as to whether Defendants' proffered reason was pretext for discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)*; McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004).

        Castillo has stated a *prima facie* case for age discrimination – he has introduced evidence that he is 68 years old; performed his job adequately (with consecutive positive reviews, performance that did not change after the positive reviews, and high regard from his subordinates); was terminated; and was replaced by someone 20+ years his junior.[81]  This surely satisfies Castillo's burden in establishing his *prima facie* case, particularly in light of the Ninth Circuit's repeated emphasis that a plaintiff's burden in establishing a *prima facie* case of discrimination is "minimal."  *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005).

        To demonstrate pretext, Castillo can rely on circumstantial evidence, including evidence "showing that [Defendants'] proffered explanation for the adverse action is 'unworthy of credence.'" *Coghlan*, 413 F.3d at 1095 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)); *see also Reeves v. Safeway Stores, Inc.*, 121 Cal.App.4th 95, 147 (2004) ("evidence that the explanation was trumped up or is 'unworthy of credence' will tend to support a finding that the action was actually motivated by discriminatory animus"); *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004) (summary judgment inappropriate because "the absence of any documentation confirming that a company hiring freeze was in place during the relevant time period is sufficient to

---

[81] Castillo Depo. Ex. 6-8; Isadvastar Depo 115:25-116:16, 117:12-19.

raise a genuine factual dispute as to whether the asserted reason was pretextual").

Here, Defendants' proffered reason for Castillo's termination does not add up – a jury could surely find it is not worthy of credence. *Coghlan*, *supra*, 1095. Defendants claim they terminated Castillo because he violated Defendants' policies when he coded a going away lunch as a birthday lunch, notwithstanding his explanation that he did so to avoid hurting his boss' feelings.[82]   Importantly, the going away lunch expense was approved when it was recoded and was therefore of no business consequence.[83]   The policies Defendants cite as the bases for the termination include (1) a general "tell the truth" kind of adage at the beginning of their handbook – hardly a policy, given its lack of detail overall and particularly in its failure to specify what conduct would violate the so-called policy and what consequences or events would flow from any such violation; and (2) a bookkeeping policy that is expressly geared toward compliance with "accounting standards, laws and regulations" and "strict [government] laws regarding price reporting and reporting of payments to health care professionals" to "ensur[e] that [Abbott] provide[s] accurate information to allow governments, insurers and other stakeholders to make informed decisions."[84]   A jury could reasonably conclude these so-called policies do not apply to Castillo's internal coding of a morale-boosting event as a birthday lunch when it was actually a going away lunch and do not support termination.

Additionally, Defendants' progressive discipline policy required Defendants to give Castillo a warning.[85]   Even if the conduct was covered by the so-called policies, a jury could conclude Castillo's explanation for the miscoding (to avoid hurting his boss' feelings) justified his conduct or at least explained his conduct such that a warning or some discipline short of termination was warranted.[86]

Defendants accurately observe that "[Castillo] is not aware of any other employees of St. Jude who were identified as having made misrepresentations on an expense reimbursement report request but who were not terminated," but that fact is of less consequence than the fact that *Defendants have not identified any other employees who were terminated or even written-up on the basis of misrepresentations on an expense reimbursement report*.   The absence of documentation from

---

[82] Isadvastar Depo Ex. 44.
[83] Isadvastar Depo 148:24-149:7
[84] ECF 30-1, Ex. A, Ex. 2 at pp. 6, 40.
[85] Castillo Decl. ¶ 7.
[86] *Id.*

Defendants – who employ over 113,000 employees[87] – likely demonstrates Defendants have singled-out Castillo on this basis when they have never otherwise applied these so-called policies (surely one of hundreds of thousands of employees has engaged in similar conduct with Defendants knowledge).

Defendants have a progressive system of discipline involving verbal, written and final warnings, but Defendants did not follow their own system with respect to Castillo's termination – they simply fired him.[88]   And before that, when Castillo complained to Human Resources about his manager discriminating against him and then complained again, Defendants simply directed Castillo to talk to his manager – the very person he complained about – and then only interviewed his manager without interviewing anyone else.[89]  Defendants' conclusion regarding Castillo's complaint summarily states the claim was unsubstantiated without any detail, as though Castillo had not complained about something of significance.  Defendants did not follow their own policies in a number of ways and the law dictates "[a] defendant's failure to follow its own policies or procedures may also provide evidence of pretext." *Moore v. Regents of Univ. of Cal.*, 248 Cal.App.4th 216, 239 (2016).  Indeed, a jury could reasonably find pretext in Defendants' failure to follow their own policies here.

All of this follows Isadvastar's insinuation that Castillo should retire.[90]  While that comment on its own may not prove Defendants' pretext in firing Castillo for miscoding a going away lunch, the circumstantial evidence that follows creates material issues of disputed fact that a jury should be permitted to decide and summary judgment on Castillo's age discrimination and related failure to prevent claims should be denied.

## B.    Disability Discrimination and Failure to Prevent Discrimination

Contrary to Defendants' contentions, there are disputed issues of fact that preclude summary judgment on Castillo's disability discrimination and related failure to prevent discrimination claims.

To state a claim for disability discrimination under FEHA, Castillo must show (1) he was disabled; (2) he was a "qualified individual" capable of performing the essential functions of his job with or without accommodation; and (3) he was subjected to an adverse employment action because of

---

[87] RJN Ex. 1.
[88] Castillo Decl. ¶ 7.
[89] Isadvastar Depo Ex. 26.
[90] Castillo Depo 74:22-75:3.

**PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**16**

his disability. *Jensen v. Wells Fargo,* 85 Cal.App.4th 245-254 (2000). *McDonnell Douglas* burden shifting applies.

Castillo has made a *prima facie* claim for disability discrimination under FEHA by demonstrating (1) he suffered from dyslexia during his employment, which is a disability (Castillo's satisfaction of this element appears to be uncontested in the motion); (2) he was a "qualified individual" capable of performing the essential functions of his job with or without accommodation – indeed, before Isadvastar became Castillo's supervisor (when his prior supervisor David Villarreal accommodated him), Castillo consistently received good performance reviews; and (3) he was subject to an adverse action because of his disability – here, Isadvastar relentlessly criticized Castillo from the moment she became his supervisor, wrote-up Castillo for criticisms resulting from the effects of his dyslexia, and then terminated Castillo on questionable grounds – namely, Castillo's miscoding of a going away lunch as a birthday lunch to avoid hurting Isadvastar's feelings.[91]

Defendants try to tie the termination decision to Boskovic instead of Isadvastar, and claim Isadvastar and Boskovic lacked knowledge of Castillo's dyslexia; however, Castillo had told his former supervisor David Villarreal about his dyslexia and the law is clear that "[a] supervisor's knowledge of an employee's disability is imputed to the employer because '[a] supervisor is the employer's agent for purposes of vicarious liability for unlawful discrimination.'" *Alejandro v. ST Micro Electronics, Inc*., 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) (quoting *Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp*., 122 Cal.App.4th 1004, 1015 (2004)). Villarreal worked for Defendants for the entire period of Castillo's employment with Defendants and thus, Villarreal's knowledge is imputed to Defendants – including Isadvastar and Boskovic – and Defendants cannot evade liability on this ground.[92]

The reality is that Castillo performed well in his job for 5 years with accommodation and then, when Isadvastar took over and stopped accommodating him, he was fast-tracked to termination.

Additionally, the evidence shows Castillo was targeted by Isadvastar and written-up because of his email issues caused by his dyslexia. Performance issues cited by Defendants in their motion ignore

---

[91] Castillo Decl. Ex. 6-8; Castillo Depo 105:25-106:7, 168:21-171:1; Isadvastar Ex. 32, 44.
[92] Castillo Decl. ¶¶ 2-3.

the abundance of positive performance reviews given to Castillo even into Isadvastar's time as his supervisor, and they ignore Isadvastar's own recognition that Castillo's performance did not downshift when she became his manager (*it was the same as before*).[93]   Defendants similarly ignore the fact that Isadvastar immediately had a disdain for Castillo notwithstanding his history of good reviews and her own observation that he was highly regarded by the people who reported to him.[94]   Written communications were not essential to his job and yet he was constantly criticized and even written up over them.[95]   The circumstantial evidence of pretext set forth in connection with age discrimination *supra*, coupled with the direct evidence of Isadvastar's criticism and write-ups of Castillo for his written communications (issues caused by his disability), constitute disputed facts that a jury should decide.

### C.     Harassment

Defendants challenge Castillo's harassment claim only as to the third element, which requires a showing of a "concerted pattern of harassment of a repeated, routine or a generalized nature . . . [that] interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that [he] was actually offended."  Motion, citing *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989).  Castillo has raised a triable issue of fact on this element because he alleges a pattern of harassment from the time Isadvastar became his supervisor – that shows Isadvastar was out to get Castillo from the get-go; Isadvastar mounted an attack on Castillo and his entire team and humiliated Castillo by belittling him publicly, conducting a witch-hunt for bad feedback about Castillo, and taking away his direct reports.[96]   Isadvastar approached Castillo's colleagues for unsolicited negative  feedback about Castillo before taking time to observe the performance of Castillo and his team, without regard for Castillo's record of good performance reviews, and without seeking or considering feedback from Castillo's long-time manager who had successfully worked with Castillo for 5 years.[97]   Isadvastar engaged in this campaign despite her explicit recognition that "[t]here [was] no shift – from [Castillo's] communication or performance," and that Castillo's

---

[93] Castillo Depo Ex. 6-8; Isadvastar Depo 115:25-116:16, 117:12-19.
[94] *Id.*
[95]  Castillo Decl. Ex. 6-8; Castillo Depo 105:25-106:7, 168:21-171:1; Isadvastar Ex. 32, 44; Isadvastar Depo 129:24-131:9.
[96] Castillo Depo 108:13-109:25; Castillo Decl. ¶ 3.
[97] Castillo Depo Ex. 6-8; Castillo Decl. ¶¶ 2-3.

1  colleagues held him in high regard.[98]  Notwithstanding Castillo's performance staying the same after his

2  positive reviews and Castillo being highly regard by his reports, Isadvastar scrutinized Castillo and even

3  said in an email that she wanted to find any simple way to let Castillo go.[99]  When she gave him a

4  coaching memo based on her alleged assessment that Castillo was underperforming, she *added*

5  assignments to his already full plate (when she did not do the same to other managers).  All these facts

6  in conjunction are sufficient to overcome summary judgment because a jury could conclude Castillo was

7  subjected to a concerted pattern of harassment in satisfaction of the third (and only challenged) element

8  of his harassment claim.

9  **D.      Failure to Engage in the Interactive Process**

10  An employer must engage in a "timely, good faith interactive process ... in response to a request

11  for reasonable accommodation by an employee or applicant with a known physical or mental disability

12  or known medical condition." Gov. Code § 12940(n).  A failure to engage is an unlawful employment

13  practice pursuant to the FEHA, independent of liability for other FEHA claims.  *Wysinger v. Automobile*

14  *Club of Southern California*, 157 Cal.App.4th 413, 424 (2007).  No magic words are necessary to trigger

15  the process – the obligation arises once the employer becomes aware of the need to consider an

16  accommodation.  *Scotch v. Art Institute of California*, 173 Cal.App.4th 986, 1013 (2009); Cal. Code

17  Regs., tit. 2, § 11069(b).  The employer must explore various accommodations even if the employee has

18  not requested any.  *Wysinger*, 157 Cal.App.4th at 426. "[F]or the process to work '[b]oth sides must

19  communicate directly, exchange essential information and neither side can delay or obstruct the

20  process.'"  *Nadaf-Rahrov v. The Neiman Marcus Group, Inc*., 166 Cal.App.4th 952, 984-985 (2008).

21  "Liability hinges on the objective circumstances surrounding the parties' breakdown in communication,

22  and responsibility for the breakdown lies with the party who fails to participate in good faith." *Gelfo v.*

23  *Lockheed Martin Corp.*, 140 Cal.App.4th 34, 62, fn.22 (2006). If it turns out that a reasonable

24  accommodation would have been available at the time the interactive process should have occurred but

25  did not owing to the employer's failure, the employer is liable.  *Scotch*, 173 Cal.App.4th at 1018.

26

27

28  [98] Isadvastar Depo 115:25-116:16, 117:12-19.
    [99] Isadvastar Depo Ex. 29.

Specific to this case, as part of an employer's interactive process obligations, when information needs clarification, "the employer…shall identify the issues that need clarification, specify what further information is needed, and allow the applicant or employee a reasonable time to produce the supplemental information."  Cal. Code Regs., tit. 2, § 11069(c)(4).

If an employer does not engage in a good faith interactive process, "it cannot be known whether an alternate job would have been found" (*Claudio v. Regents of the Univ. of Cal.*, 134 Cal.App.4th 224, 245 (2005)), and the interactive process determines which accommodation is required.  *Id.; Jensen v. Wells Fargo Bank* 85 Cal.App.4th 245, 263, fn. 7 (2000).  Indeed, the interactive process could reveal solutions that neither party envisioned.  *Wysinger*, *supra*, at 424-425.

Castillo did not think he needed accommodation because he did not believe written communications were essential functions of his job, but when Isadvastar focused so heavily on them, it makes sense that she should have considered ways to accommodate Castillo – she could have asked Villarreal who successfully accommodated Castillo for 5 years.[100]  But Isadvastar did not consider any accommodations and used her so-called interactive process meeting with Castillo to criticize him further and even called the meeting "Brad's Coaching Session" in her related email.[101]

In summary, there are disputed issues as to whether Castillo's disability could reasonably have been accommodated, the degree to which Defendants engaged in an interactive process with Castillo, and whether such a process could have been fruitful.

### E.      Failure to Provide Reasonable Accommodation

A failure to reasonably accommodate a disabled employee is an unlawful employment practice pursuant to the FEHA.  Gov. Code § 12940(m). The FEHA requires employers to make reasonable accommodation for known or perceived disabilities of employees to enable them to perform a position's essential functions, unless doing so would produce undue hardship to the employer's operations.  Gov. Code §§ 12940(a)(1), (a)(2), & (m); *A.M. v. Albertsons, LLC*, 178 Cal.App.4th 455, 463-464 (2009).  "The hallmark of FEHA is the flexibility it requires of employers to work with its disabled employees to accommodate their needs." *Sargent v. Litton Systems, Inc.*, 841 F.Supp. 956, 962 (N.D. Cal. 1994)

---

[100] Castillo Decl. ¶ 2.
[101] Yuzna Decl. Ex. 2.

(distinguished on other grounds).   Indeed, "an employer must do more than speculate about what accommodations are feasible."   *Id.* (citations omitted).   This duty arises even if the employee has not requested a particular accommodation.   *Prilliman v. United Air Lines, Inc.*, 53 Cal.App.4th 935, 949-950 (1997).   Here, there is a pristine comparator of accommodation because Villarreal successfully accommodated Castillo for years.[102]   Defendants' failure to accommodate Castillo after Isadvastar took over as his supervisor is a glaring, actionable failure to accommodate in stark contrast with Castillo's performance and success under Villarreal.   Accordingly, summary judgment should be denied on this claim as well.

### F.      Retaliation – FEHA and Labor Code Section 1102.5

Castillo complained to Defendants about Isadvastar's discrimination and harassment, and then he got fired.   To establish a *prima facie* case of retaliation under the FEHA, a plaintiff must show that (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.   *See Morgan v. Regents of the Univ. of California*, 88 Cal.App.4th 52, 69 (2000). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Id.* (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)).   Burden shifting applies to FEHA claims such that, when a plaintiff has made out his *prima facie* retaliation claim, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action.   *Manatt v. Bank of America,* 339 F.3d 792, 800 (9th Cir. 2003.)   Here, even if Defendants' proffered reason satisfied their burden and the burden were to shift back to Castillo to prove pretext, Castillo has raised factual disputes sufficient to meet his burden, as provided *supra*, and summary judgment should be denied.

A decision maker's ignorance does not "categorically shield the employer from liability if other substantial contributors to the decision bore the requisite animus. [Citation.]" *Reeves*, *supra*, 121 Cal.App.4th at 110.   If he participated in the decision, jurors may infer animus.   *Roebuck v. Drexel University,* 852 F.2d 715, 727 (3d Cir. 1988).  Because Isadvastar and Boskovic were each a motivating

---

[102] Castillo Decl. ¶ 2.

force in Castillo's termination, their animus is imputed to Defendants.  *Reeves*, *supra*, at 110. Defendants' claim that Boskovic was not aware of Castillo's complaints is absolutely disputed and controverted by documents.  *See* FN 70, *supra*.  Additionally, Defendants' attempts to distance Isadvastar from the termination decision do not work to negate this inference because the evidence shows Isadvastar was very much involved in the termination decision – or at a minimum, there are disputed facts on the issue.  *See* discussion of changing decisionmaker contentions at Section I *infra.*

Unlike FEHA retaliation claims, Labor Code section 1102.5 claims require an even lesser showing because *McDonnell Douglas* burden-shifting does not apply.  *See Lawson v. PPG Architectural Finishes, Inc.* 12 Cal.5th 703 (2022); Labor Code section 1102.6.  Instead, Section 1102.5 claims are subject to only two-part burden shifting – (1) the employee need only prove that his protected activity was a *contributing factor* in his adverse action, and then (2) the employer must prove by *clear and convincing evidence* that the adverse action would have occurred despite the protected activity.  *Id.*

The proximity in time between Castillo's May 17, 2021 and June 4, 2021 complaints and his August 12, 2021 termination gives rise to an inference that Castillo's complaints contributed to the termination decision, and all the evidence of pretext provided *supra* surely gives rise to a material dispute sufficient to meet Plaintiff's low burden.  Defendants have not provided uncontroverted *clear and convincing* evidence that Castillo's termination would have occurred notwithstanding his complaints.  Defendants' own progressive discipline policy negates any such claim or at least subjects such a claim to serious doubt.  The policies Defendants purport to rely on for the termination do not even support the termination, and a jury could easily infer Castillo's miscoding on his expense report for the considerate reason of not wanting to hurt his boss' feelings under all the circumstances discussed herein does not establish clear and convincing evidence that Castillo would have been terminated even if he did not complain about his boss twice.  Castillo's retaliation claims are rife with disputed facts that should be decided by a jury and summary should be denied on Castillo's FEHA and 1102.5 claims.

### G.    Wrongful Termination

The Parties agree Castillo's wrongful termination claim is derivative of his discrimination and retaliation claims.  Accordingly, summary judgment should be denied on Castillo's wrongful termination cause of action in lockstep with denial of summary judgment on Castillo's discrimination

and retaliation claims.

## H.   Personnel Records

Labor Code Section 1198.5 requires an employer to produce an employee's personnel records within 30 days of receiving the employee's request for records. Castillo requested his records from Abbott and St. Jude on September 16, 2021 through counsel.[103]   Castillo's attorneys' email tracker shows General Counsel for Abbott and St. Jude received the request September 16, 2021.[104]   Neither defendant produced records.[105]   Thus, Castillo is pursuing a claim against Defendants pursuant to Labor Code section 1198.5 (Cause of Action No. 10) and the evidence supports Castillo's claim.

Defendants contend that "Abbott requested an authorization from counsel to release the personnel file, but did not receive a response to the request.  Accordingly, Castillo's personnel file was not provided to counsel at that time."  Notably, Defendants do not produce any evidence of such a request.  The only evidence Defendants produce is a non-specific sentence in a declaration stating, "My office requested an authorization from counsel to release the personnel file."[106]  Beyond that one general sentence, Defendants do not specify the person who made the request, the person to whom the request was made, the way the request was made (i.e., phone call, letter, email), and most importantly, Defendants do not provide evidence regarding <u>when</u> the alleged request was made – if Defendants made the authorization request after the 30 day timeframe for Defendants to produce the records, the alleged request for authorization would be of no consequence anyway because the production would already be untimely and non-compliant.

Castillo disputes Defendants' spare contention that Abbott requested authorization to release the records.  Castillo's attorney has no recollection of receiving such a request for authorization and has no record of receiving such a request for authorization.[107]   After Castillo's attorney emailed Castillo's records request on September 16, 2021, the only correspondence Castillo's attorneys received from Defendants is a letter from Defendant's counsel Anthony Grice, dated September 21, 2021, and a transmitting email of the same date, which make no mention of the records request or any need for

---

[103] Colby Decl. ¶ 2, Ex. 1.
[104] Colby Decl. ¶ 3, Ex. 2.
[105] Colby Decl. ¶ 4.
[106] Motion 24:1-7, citing Braden Decl. ¶ 3.
[107] Colby Decl. ¶ 5.

authorization.[108]  Castillo's counsel did not receive any other communication from Defendants thereafter through December 1, 2021 when Castillo filed his lawsuit.[109]  Defendants proffer no reliable evidence – documentary or otherwise – to support their alleged request for authorization.  As to Abbott, a material factual dispute exists as to Abbott's failure to produce Castillo's personnel records and summary judgment should be denied.

As to St. Jude, Defendants do not proffer any argument or evidence relating to Castillo's personnel records request whatsoever; Defendants omit St. Jude from the records section of their motion all together.  Accordingly, it appears Defendants do not move for summary judgment as to St. Jude for Castillo's personnel records claim and, even if they did, there would be no evidence to support it and, at a minimum, a material factual dispute would exist in-line with the material factual dispute as to Abbott.  On these bases, Defendants' motion for summary judgment should be denied as to Castillo's Labor Code section 1198.5 cause of action as to all defendants.

## I.      Punitive Damages

If the Court denies summary judgment on any of Castillo's claims, summary judgment on Castillo's punitive damages claims should be denied as well.  Defendants' everchanging story about who made the decision to terminate Castillo should surely be decided by a jury, given that Defendants own representations on this issue are disputed.  Initially in the litigation, Defendants said only Isadvastar was the decisionmaker.[110]   Now, Defendants say Boskovic was the decisionmaker, but then the documents show (and Boskovic recognizes), Boskovic could not make the ultimate decision on her own – she had to make a recommendation and obtain approval from a Vice President and a Director (directors and managing agents, by title and their role in this very case, have "discretionary powers and exercise [of] substantial discretionary authority."  *Wysinger*, *supra*, at 428; Cal. Civ. Code § 3294(b)).[111] This issue is disputed within Defendants' own assertions and should be weighed by a jury.

Defendants' evasive approach to the termination decision also has weight as evidence in a jury's decision as to whether Defendants' conduct was oppressive or malicious for purposes of awarding

---

[108] Colby Decl. ¶ 6.
[109] Colby Decl. ¶ 7.
[110] Yuzna Decl. Ex. 1.
[111] Boskovic Decl. ¶ 8.

punitive damages. *See Cloud v. Casey*, 76 Cal.App.4th 895, 911–912 (1999) ("The jury could properly conclude that the [defendants] intentionally discriminated by denying Ms. Cloud a promotion based on gender, then attempted to hide the illegal reason for their decision with a false explanation, and that in this, they acted in a manner that was base, contemptible or vile.... Evidence that the decisionmaker attempted to hide the improper basis with a false explanation also supports the jury's determination that the conduct was willful and in conscious disregard of Ms. Cloud's rights."); *see also Rangel v. American Medical Response West*, 2013 WL 1785907 at *34-35 (E.D. Cal. 2013) ("there is sufficient circumstantial evidence … from which a reasonable trier of fact could find AMR, by virtue of Foletta's actions as a managing agent, intentionally terminated Rangel because she had a engaged in a protected activity (i.e., reporting sexual harassment) and then gave a false explanation to cover up the reason for the termination."); *see also Veloz v. Sears, Roebuck* and Co., 2017 WL 5151313 at *14 (C.D. Cal. 2017) (triable issues of fact existed supporting punitive damages in a FEHA disability case).  Here, Isadvastar teamed-up with Boskovic to push-out Castillo and now Defendants misrepresent Boskovic's role and knowledge despite her documented involvement all along – this on top of all the evidence of pretext set forth *supra* in connection with Defendants' termination of Plaintiff over a miscoding of a going away lunch.

Punitive damages are proper when the defendant's acts, like here, are "in blatant violation of law or policy" (*Scott*, 175 Cal.App.4th at 715-716) and "[p]unitive damages are properly awarded 'when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate.'"  *Wysinger*, *supra*, at 428 (citations omitted).

Here, Defendants acted with wanton disregard for Castillo's disability and right to accommodation, and the protections he deserved in light of his age in his industry and his protected activities.  Defendants stood by and let one of their Directors to take over as Castillo's supervisor and decide he had to be fired before she even had a reason, and then enlist the help of Human Resources all the way up to Vice President ranks in executing her objective – all without regard for Castillo's history of good performance and the high regard in which he was held.  Defendants' Vice President and Director who allegedly ultimately authorized and decided the termination effectively ended Castillo's career at the discriminatory, retaliatory whim of his new boss.  A jury should get to decide whether

Castillo is entitled to punitive damages under these circumstances.

## V.   **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendants' motion.

DATED:  January 30, 2023                    COLBY LAW FIRM, PC


By:  _____
                                            AARON COLBY
                                            ZOE YUZNA

                                            Attorneys for Plaintiff
                                            BRADLEY CASTILLO