UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY CASTILLO,<br><br>Plaintiff,<br><br>v.<br><br>ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., *et al.*,<br><br>Defendants. | Case No. 22-cv-00107-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 30 |

On February 24, 2023, the Court held a hearing on defendants' motion for summary judgment. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART. As discussed at the hearing, the trial date has been moved to **June 5, 2023 at 9:00 a.m.** The pretrial hearing will be held on **June 1, 2023 at 10:30 a.m.** (not May 30, as discussed at the hearing).

**DISCUSSION**

Plaintiff Bradley Castillo alleges the following claims under California law: (1) age and discrimination and harassment under the Fair Employment and Housing Act ("FEHA"); (2) disability discrimination and harassment under FEHA; (3) failure to provide an accommodation for a disability under FEHA; (4) failure to engage in the interactive process under FEHA; (5) retaliation under FEHA and Cal. Labor Code § 1102.5; (6) failure to prevent discrimination, retaliation and harassment under FEHA; (7) wrongful termination in violation of public policy; and (8) failure to provide a personnel file under Cal. Labor Code § 1198.5.

The Court finds that there are disputes of fact sufficient to defeat summary judgment as to all causes of action except Castillo's claims of age discrimination, age harassment, and failure to prevent discrimination and harassment on account of age. As to these claims, it is undisputed that

Castillo's supervisor, Noushin Isadvastar, never made any negative comments to Castillo about his age. *See* Castillo Depo. at 74:7-9.  Castillo's age-based discrimination and harassment claims are based on the fact that after Isadvastar became Castillo's supervisor, she asked him how long he was going to be with the organization and Castillo "thought she was looking at me because I was older." *Id*. at 75:9-10.  Castillo also testified at his deposition that although Isadvastar never made any negative statements about his age, he believed she was harassing him on account of his age (and disability) because "there was no [other] reason to explain" Isadvastar's criticism of his work performance.  *Id*. at 111:11-15.  Viewing the evidence in the light most favorable to Castillo, Isadvastar's single question asking Castillo how long he planned to stay with the organization and Castillo's subjective belief that Isadvastar was discriminating against him on account of his age is not sufficient to raise a dispute of fact as to whether Castillo experienced age-based discrimination or harassment.  *See Schuler v. Chronicle Broadcasting Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (affirming summary judgment in favor of employer on race discrimination claim and stating that an employee's "subjective personal judgments [about experiencing discrimination] do not raise a genuine issue of material fact."); *Jones v. Dep't of Corrections & Rehabilitation*, 152 Cal. App. 4th 1367, 1378 (2007) (affirming summary judgment in favor of employer on FEHA sex harassment claim where the plaintiff testified that comments and complaints her coworkers made were not prompted by her sex because "[t]he absence of the nexus between the alleged harassment and Jones's gender negates her FEHA claim.").

To establish his claims for failure to accommodate his disability and failure to engage in the interactive process, Castillo must prove that he requested a reasonable accommodation, and defendants failed to provide one to him.  *Gelfo v. Lockheed Martin Corp*., 140 Cal. App. 4th 34, 54-55 (2006).  Although it is a close question, the Court finds that there are triable issues of fact sufficient to defeat summary judgment on these claims.  Castillo states that his previous supervisor accommodated his dyslexia by "cutting him slack" on his written communication and communicating verbally with him as much as possible. Castillo Decl. ¶ 2.  After Isadvastar became Castillo's supervisor, Isadvastar told Castillo he needed to improve his written communication, including punctuation and spelling, and that he needed to respond to emails promptly.  When

Castillo and Isadvastar discussed his dyslexia on May 7, 2021, Castillo told her that because of his dyslexia, he saw words differently and that "that's why he – sometimes he needs to sleep on the writing [before responding] to people." Isadvastar Depo. at 123:23-25. Isadvastar testified that she thought it was irrelevant that Castillo needed that extra time, and that she told Castillo that he needed to promptly respond to emails ("in 20 or in 2 minutes") and provide "quality content." *Id*. at 131:21-132:8. Defendants emphasize the fact that in a May 11, 2021 meeting between Castillo and Isadvastar, Castillo told Isadvastar that he did not need any special software to accommodate his dyslexia and that Castillo stated he had been managing his dyslexia since he was 2 or 3 years old and did not need any support from her or St. Jude.[1] *See* Isadvastar Depo., Ex. 27 ("Manager's Record of Interactive Discussion with Employee"). However, the documentation of that meeting also states that Castillo told Isadvastar that his previous manager was "fully aware of the situation" and that Isadvastar "can ask him" if she wanted to. *Id*. That form also states that Isadvastar told Castillo that she "repeated my expectations on his performance to improve himself and the team's interaction and communication that need[s] to be professional and succinct." *Id.* In opposition to defendants' motion for summary judgment, Castillo also argues that he did not understand the May 11, 2021 meeting to be an interactive process meeting about his need for accommodations as opposed to one focused on the performance issues Isadvastar had raised, and Castillo notes that the "accommodations" section of the "Manager's Record of Interactive Discussion with Employee" form is blank. *Id*.

For similar reasons, the Court finds that there are disputes of fact regarding Castillo's disability discrimination and harassment claims (and related failure to prevent disability discrimination and harassment claims). Viewing the evidence in the light most favorable to Castillo, the record shows that once Isadvastar became his supervisor she criticized him about his "communication" – including spelling and punctuation errors in his internal work emails – and that such criticism may have continued after he disclosed his dyslexia to her. *See e.g.*, Castillo Depo. at 61:1-24; 72:19-73:22; 105:2-106:7; 169:23-170:20. Castillo also testified that Isadvastar sought

---

[1] The parties dispute whether Castillo was employed by St. Jude only or whether St. Jude and Abbott were joint employers. This question was not presented for resolution in the current motion.

3

negative feedback about Castillo from people who were not on his team, and that he felt humiliated by this "public targeting." Castillo Decl. ¶ 3. This evidence could support a finding of discrimination and harassment based on disability. Further, as discussed below, there are disputes of fact as to whether the reason for Castillo's termination was pretextual.

There are also disputes of fact regarding Castillo's retaliation and wrongful termination claims. Viewing the evidence in the light most favorable to Castillo, the evidence shows that Castillo complained to Human Resources several times in May and June of 2021 about Isadvastar's treatment of him, including his belief that she was harassing him on account of his age; that Isadvastar was aware of his complaints; Isadvastar referred Castillo for investigation by Human Resources in July 2021 after he submitted the "birthday lunch" expense report; and Isadvastar's involvement in the events that led to Castillo's termination in August 2021. Although defendants have proffered a legitimate, non-discriminatory reason for Castillo's termination – the intentionally miscoded "birthday lunch" expense report and subsequent lying about it – a reasonable juror could conclude that under all of the circumstances, the stated reason for termination was "unworthy of credence." *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 112 (2004) (reversing summary judgment in favor of employer and finding, under "cats paw" theory, that there were triable disputes of fact as to retaliatory motives for the plaintiff's termination). Those circumstances include, *inter alia*, how long Castillo had been working at the organization, Castillo's positive job evaluations under his former supervisor, the fact that the expense was ultimately approved and was not fraudulent, Castillo's stated reason for miscoding the lunch, Isadvastar's May 3, 2021 email to Boskovic stating that she decided to put Castillo on a performance improvement plan "or any simple way of letting him go," and evidence of a progressive discipline policy.[2] Further, in order to obtain

---

[2] Defendants argue that Castillo had performance issues under his previous supervisor, citing specific portions of job reviews. However, in those same performance reviews Castillo received generally high ratings, and thus there are disputes of fact as to Castillo's past performance. With regard to the existence of a progressive discipline policy, Castillo states in his declaration that based upon his role as a manager, he is aware that defendants have a progressive system of discipline involving verbal, written and final warnings, culminating in termination, and that an employee's conduct would have to be particularly egregious to result in termination rather than a warning. Castillo Decl. ¶ 7. Defendants object that Castillo's declaration statement lacks foundation. However, even if Castillo cannot lay a foundation for such testimony at trial, Castillo's employment agreement states, *inter alia*, that in the event of a breach of the agreement (which includes Castillo's agreement to abide by the Code of Business Conduct), the employee "shall be subject to discipline, up to and including termination," – language that suggests the existence of a progressive system of

summary judgment on Castillo's retaliation claim under Cal. Labor Code section 1102.5, defendants must establish by clear and convincing evidence that St. Jude "would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." Cal. Lab. Code § 1102.6.  The Court cannot conclude that defendants have made such a showing by clear and convincing evidence.

Finally, the record is disputed as to the facts surrounding Castillo's request for his personnel file, and thus summary judgment on his claim under Cal. Labor Code § 1198.5 is inappropriate.  Because various claims are surviving summary judgment, the Court finds it appropriate for Castillo's claims for punitive damages to proceed to trial.

The trial date has been moved to **June 5, 2023 at 9:00 a.m.**  The pretrial hearing will be held on **June 1, 2023 at 10:30 a.m.**

**IT IS SO ORDERED**.

Dated: February 24, 2023

SUSAN ILLSTON
United States District Judge

---

discipline. Castillo Depo., Ex. 1.  Thus, the Court finds that these matters are disputed.  Similarly, the parties dispute whether Isadvastar was involved in the decision to terminate Castillo.  At the very least, however, it is undisputed that Isadvastar referred Castillo's expense report to Boskovic for investigation, and that investigation led to Castillo's termination.

5